IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| DONNA S. GOHAGAN, | ) | CIVIL ACTION NO. 9:12-1299-DCN-BM |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein she was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Rule

73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI)[2] on October 23, 2008, alleging disability as of June 21, 1991 due to epileptic seizures,

foot and knee pain, and anxiety.  (R.pp. 39-44, 149, 592, 598, 603).  Plaintiff's claims were denied

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be
substituted for Commissioner Michael J. Astrue as the Defendant in this lawsuit.

[2]Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No.
06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish
that she was disabled during the insured period for DIB may still receive SSI benefits if she can
establish that she is disabled and has limited means."  Sienkiewicz v. Barnhart, No. 04-1542, 2005
WL 83841, at ** 3 (7th Cir. Jan. 6, 2005).  See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir.
1999)[Discussing the difference between DIB and SSI benefits].



initially and upon reconsideration.  Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on May 20, 2010.  (R.pp. 588-617).  The ALJ thereafter denied Plaintiff's claims in a decision issued August 11, 2010.  (R.pp. 21-30).  The Appeals Council denied Plaintiff's request for a review of the decision, thereby making the determination of the ALJ the final decision of the Commissioner.  (R.pp. 4-8).

Plaintiff then filed this action in United States District Court.  Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits.  The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980).  If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision.  Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the



2

Commissioner.  Laws, 368 F.2d at 642.  "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence."  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was only twenty-six (26) years old when she alleges she became disabled[3], has a high school education with one year of college, and past relevant work experience as a heavy equipment operator and carpenter.  (R.pp. 116, 133-140, 141, 154, 448).[4]  In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.  After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[5] of a seizure disorder, right foot impairment with chronic pain, and degenerative disc disease, thereby rendering her unable to perform any of her past relevant work, she nevertheless retained the residual functional

---

[3]Plaintiff claims she has been disabled since June 21, 1991.  However, she was last insured for purposes of qualifying for DIB on December 31, 1996, when she was thirty-two years old, and would therefore not be entitled to DIB after that date.  For purposes of coverage under SSI, Plaintiff was forty-four years old on the date of her October 23, 2008 SSI application.  See 20 C.F.R. § § 404.131, 416.335.  See also n. 2, supra.

[4]Plaintiff has also previously worked as a nursery employee and as a fast food worker.  (R.p. 116)

[5]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).



capacity (RFC) to perform a significant range of light work,[6] and is therefore not entitled to disability benefits. (R.pp. 23, 25, 29).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to give proper weight to Plaintiff's medical reports and by discounting the opinion of her treating physician, Dr. David Rodgers; by improperly assessing the credibility of Plaintiff's subjective testimony as to the extent of her pain and limitations; and by relying on the Medical-Vocational Guidelines (i.e., the "Grids")[7] to conclude that Plaintiff was not disabled when he should have obtained Vocational Expert (VE) testimony for this purpose. Plaintiff further contends that the Appeals Council erred by not accepting/adding additional reports which Plaintiff submitted to her administrative file on appeal. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed.

## I.

Plaintiff's medical records date to early 1991. (R.pp. 460, 475, 477). On May 28, 1991, she was evaluated at the Medical University Clinic. Plaintiff told the evaluator at that time that

---

[6]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

[7]"The grids are matrices of the 'four factors identified by Congress -- physical ability, age, education, and work experience -- and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.'" Daniels v. Apfel, 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting Heckler v. Campbell, 461 U.S. 458, 461-462 (1983)). "Through the Grids, the Secretary has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels (i.e., sedentary, light, medium, heavy, and very heavy.)" Daniels, 154 F.3d at 1132.



she had suffered from seizures since the age of fourteen, although there are no medical records in the evidence documenting this report or indicating the severity of this condition. (R.p. 448-449). Plaintiff was at that time working as a carpenter, but she subsequently quit her job on June 12, 1991 for "personal reasons". (R.p. 461).

Plaintiff subsequently obtained a statement from Dr. Timothy Carter of the Medical University of South Carolina, Department of Neurology, on June 25, 1991 in which Dr. Carter opined that Plaintiff was unable to work full-time as a carpenter. (R.p. 450). While this statement indicated that Plaintiff had been under Dr. Carter's care since June 4, 1991, there do not appear to be any treatment notes from Dr. Carter other than from when Plaintiff was initially seen at the Medical Clinic on May 28, 1991 (but apparently not by Dr. Carter) followed by a one time visit with Dr. Carter on June 5, 1991. (R.pp. 491-492, 494-495).[8] Plaintiff did have an EEG as well as a CT scan of the brain performed on June 5, 1991, both of which were normal. (R.pp. 499-500). In a separate treatment entry dated June 25, 1991 (the same date as Dr. Carter's statement), it was noted[9] that Plaintiff had been diagnosed with a seizure disorder and had been advised not to return to carpentry work for four months until she was seizure free, although she could do other types of work. This treatment note further indicates, however, that Plaintiff had stated she "doesn't want to do anything else", and had applied for unemployment compensation. (R.p. 497).

On August 23, 1991, Plaintiff obtained a statement from Dr. Douglas Dorn (a family practitioner) that she was "disabled from working due to seizure disorder from 4-15-91 to 6-1-92, at least". (R.p. 490). However, there are no medical records in the evidence to indicate that Dr. Dorn

---

[8]Plaintiff may have also been seen by Dr. Carter on June 11, 1991, but this is not clear from the signature. (R.p. 498).

[9]Although Plaintiff was apparently seen by Dr. Carter on that date, the notations on the clinic records were entered by a social worker. (R.p. 497).



had ever treated Plaintiff for a seizure disorder, and no further explanation is given for this opinion of disability.  On October 29, 1991, Plaintiff was seen at the Medical University Hospital and reported that she had had no seizures since her last visit, although she did have dizzy spells approximately once a week.  Plaintiff was continued on her medication (Dilantin).  (R.p. 495).

Plaintiff acknowledges in her brief that, thereafter, "reports for her seizure disorder from 1991-1996 are limited".  See Plaintiff's Brief, p. 4.  Nine months after her visit to the Medical Hospital on October 29, 1991, a counselor with the South Carolina Vocational Rehabilitation Department wrote in a letter dated July 6, 1992 to the Berkeley County Department of Social Services that Plaintiff was "currently unable to work due to her disability", although the counselor also noted that Plaintiff had "last worked 3/7/92 in a sheltered workshop program".  No medical records or further explanation for the rehabilitation counselor's statement is provided in his letter. (R.p. 451).  What medical records there are reflect that on January 5, 1993 Plaintiff reported that she had not had any seizures since March or April of 1992,[10] although she did experience dizziness "at times".  On her next visit on July 6, 1993, Plaintiff reported that she had had no seizures since her last visit and had no other complaints, although she did say she would sometimes "daydream", usually when she was watching television.  Plaintiff was then "cleared to return to work [with] precautions".  (R.pp. 364-365).  Cf. Orrick v Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) [ability to work with impairment detracts from finding of disability].

Plaintiff was next seen on January 4, 1994, where she again reported that she had had "no seizures since last visit", although she continued to complain of occasional "dizzy spells".  It was also noted on physical examination that Plaintiff had an intact gait, normal muscle tone and bulk,

---

[10]There are no medical records documenting that Plaintiff had these seizures or discussing their severity.



with full (5/5) strength.  (R.p. 366).  See Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment].

However, in a subsequent visit on February 15, 1994, Plaintiff told the medical provider that her "last seizure activity was Aug. 1993" (contradicting her previous statements), but that she had had no other seizure activity since that time.  (R.p. 367).  Plaintiff had no other complaints, and these records indicate that Plaintiff's seizure disorder was "well controlled" with medication.  (R.pp. 366-367).  Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [Noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling."]. Another medical clinic note (undated, but apparently from around that same time) indicates that Plaintiff had not had any seizures since her last visit, and had no other complaints other than occasional dizziness.  This report indicated that Plaintiff's seizure disorder was under "fair control". (R.p. 368).

On May 10, 1994 Plaintiff reported no seizure activity since her last visit with an increase in dizziness, and on November 15, 1994, Plaintiff again reported no seizure activity since her last visit, but stated that she sometimes experienced light headiness.  (R.pp. 369-370).  The next medical document referenced by either party is not until March 18, 1999 (over four years later), and is simply a referral by Dr. John Swicord of the Plaintiff to an unnamed "Neurology Dept. & Dermatology Appt." with a diagnosis of seizures and skin lesions on her right forearm.  (R.p. 456). No further medical information, test results, or analysis is provided with this document.

Nine years later, on March 12, 2008, Plaintiff was seen by Dr. Hal Hatchett, a podiatrist, complaining of pain in her feet of about a nine months duration.  Plaintiff denied pain or arthritic joints; any localized numbness, weakness, or tingling; or that she was suffering from any



depression or anxiety. Dr. Hatchett found Plaintiff to be well developed and alert, oriented X 3, and in no apparent distress. Vascular, neurological, and dermatological examination of Plaintiff's lower extremities were all normal. Orthopedically, Plaintiff had complete range of motion on all joints of the feet bilaterally, with her ankle joint also having a normal range of motion without crepitus. Other joints examined were also all normal without pain, crepitus, or deformity. Plaintiff did exhibit pain on deep palpation to the medial plantar of the left foot, with mild edema being noted. Mild equinus was also noted with the knee in the flexed and extended position, with significant equinus noted with the knee in the flexed and extended position bilaterally, resulting in pain to the midtarsus and anterior aspect of the right ankle. Plaintiff was diagnosed with plantar fasciitis of the left, mild DJD midtarsus of the right, equinus bilaterally, with pain on ambulation. Plaintiff was provided with medications, instructions on dealing with this impairment, and was given some shoe recommendations. (R.pp. 215-216).

Plaintiff continued thereafter to be followed by Dr. Hatchett for treatment, and by August 13, 2008 Plaintiff reported "significant improvement" in her condition, and that she had been doing her range of motion exercise program daily. See generally, (R.pp. 210-214). Cf. Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)[conservative treatment inconsistent with allegations of disability]. That same month Plaintiff was seen at Palmetto Primary Care Physicians for a followup of her seizure disorder, where Plaintiff apparently reported that she had had no seizures in two years. She was on Keppra at that time, and also took Ibuprofen. Physically, Plaintiff denied having any joint, muscle or back pain. Plaintiff's seizure disorder was listed as being "stable". (R.pp. 325-326).

Plaintiff continued to be followed by Dr. Hatchett for her complaints of foot and knee pain, with medical records indicating that Plaintiff sprained her right ankle sometime around September 11, 2008. Plaintiff used a walker for a time, and eventually transitioned to a walking boot.



(R.pp. 245-247, 327-328, 334, 421-423).  On December 17, 2008 Plaintiff was referred by Dr. Hatchett to physical therapy for treatment.  (R.p. 244).  At the completion of her physical therapy regimen, Plaintiff reported significant improvement in her foot pain, although she said she still experienced pain.  In addition to continuing Plaintiff on her medications, Dr. Hatchett discussed a home exercise program with her.  (R.p. 243).

On February 24, 2009, Plaintiff was seen at Palmetto Primary Care Physicians by a "Dr. Hogue".  Plaintiff was complaining of chest pain of about one weeks duration and anxiety of about one months duration.  Her seizure disorder was also noted.  Plaintiff denied having any joint, muscle or back pain, and on examination her extremities displayed no edema, cyanosis, or clubbing, and there was no tenderness noted in her extremities or spine.  Psychiatrically she was found to be oriented to time, place, and person, but was "nervous".  Plaintiff was assessed with anxiety and acid reflux with chest pain (resolved).  Her seizure disorder was noted as being "stable", and Plaintiff was prescribed medications for her complaints.  (R.pp. 190-192).

In a report of contact with vocational rehabilitation on March 10, 2009, Plaintiff reported that she "rarely has seizures anymore since being on meds", but that she had had one "a [couple] months ago", although it may have been more than six months ago,[11] but that prior to that one she had not had one in a long time.  Plaintiff reported she took Keppra for her seizures and that she is able to "do more now that her [seizures] are controlled".  Plaintiff also noted that she had recently been diagnosed with anxiety, well controlled on Wellbutrin, and that she was able to perform all activities of daily living and socializing. (R.p. 130). <u>Gross</u>, 785 F.2d at 1166 ["[A] psychological

---

[11]There is no record in any of Plaintiff's medical reports over the previous six months of Plaintiff ever having reported having a seizure.  <u>Anderson v. Barnhart</u>, 344 F.3d 809, 815 (8th Cir. 2003) [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints].



disorder is not necessarily disabling. There must be a showing of related functional loss"].

On March 4, 2009, state agency physician Dr. Judith Von completed a Psychiatric Review Technique form in which she opined after review of Plaintiff's medical records that Plaintiff did not have a severe mental impairment and that her anxiety diagnosis resulted in only a mild difficulty in maintaining concentration, persistence or pace, with no restrictions on Plaintiff's activities of daily living or social functioning, and with no episodes of decompensation. (R.pp. 287-299). On March 19, 2009, state agency physician Dr. Jean Smolka reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment in which she opined that Plaintiff had the lifting capacity for light work with the ability to stand and/or walk (with normal breaks) for a total of at least two hours in an eight hour work day, sit (with normal breaks) for about six hours in an eight hour work day, with her ability to push and/or pull limited in her lower extremities due to chronic foot pain. Dr. Smolka further opined that Plaintiff could frequently balance, stoop, kneel, crouch, crawl, occasionally climb ramps/stairs, but should never climb ladders/ropes/scaffolds. Plaintiff had no other limitations other than that she should avoid hazards such as machinery and heights due to her history of seizures. (R.pp. 226-231, 285-286).

On March 24, 2009, Plaintiff noted that her anxiety was "improving", but that she was still suffering from occasional GERD (acid reflux). (R.pp. 193-194). Plaintiff also continued to be seen for her complaints of ankle and foot pain, for which she received medication, and although minimal objective findings were noted, the medical records reflect that she sometimes used a walker or walking boot. (R.pp. 232-233, 241-242). On June 16, 2009, Plaintiff reported that she could walk a block even when her feet were swollen, that she had not had a seizure for two years (contradicting her statement of March 10, 2009), and that she was able to drive an automobile. Plaintiff noted her diagnosis of anxiety, but reported that she had no heart problems. However, she now reported that



she had depression.  With respect to her activities, Plaintiff reported that she was married with one child who she took to and from work, that she was able to take care of her own personal hygiene, that she cooked, did all of the household chores, took care of her finances together with her husband, helped her daughter with her school work, had close friends, got along with people and relatives, "likes soaps and news on t.v.", enjoyed music, socialized during the day, and used a computer.  (R.p. 121).  See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)[Accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating pain where she engaged in a variety of activities].

That same month Plaintiff was again seen at Palmetto Primary Care Physicians. Plaintiff complained of anxiety and pain that "comes and goes", but was found on examination to be well nourished, well developed, and in no distress.  Plaintiff's extremities displayed no edema, cyonosis or clubbing; and there was no tenderness in her extremities or her spine.  Plaintiff complained of pain in her limbs, which was listed as being a "new" complaint, while her anxiety was noted as being "stable".  (R.pp. 521-522).  On September 1, 2009, her anxiety was described as "worsening", with a notation that Plaintiff had an abusive husband.  (R.pp. 178-179, 523-524).

Two months later (November 4, 2009) Plaintiff was seen for the first time by Dr. Rodgers, who is a physician with Palmetto Primary Care Physicians.  Plaintiff complained to Dr. Rodgers of joint pain all over her body, in particular heal pain, knee pain, ankle pain and low back pain, and advised that she was on medication for anxiety and depression.  Plaintiff told Dr. Rodgers that she had last had a seizure in 2005 or 2006.  On examination Plaintiff's extremities revealed no edema or deformities, and she had equal and good pulses bilaterally.  She had a normal gait, balance, and "motor", while psychiatrically she was alert, oriented to time, place and person, with no difficulties with speech or language.  Plaintiff's knee displayed no deformities or effusion, and she



had full and equal range of motion, although there was some left/right medial tenderness noted. Dr. Rodgers assessed Plaintiff with "new" arthritis in multiple sites, stable seizure disorder, and improving depression. (R.pp. 525-527).

On November 11, 2009, Dr. Rodgers gave Plaintiff an injection in her right knee. (R.pp. 528-529). At a followup visit on December 1, 2009, Plaintiff reported that the injection had helped her right knee, and requested that she be given one in her left knee. Examination of Plaintiff's lower extremities at that time was again generally negative. (R.pp. 530-531). Dr. Rodgers saw Plaintiff again on January 6, 2010, at which time her examination was essentially normal. Plaintiff reported that her anxiety and depression was moderate but improving, and she was continued on Wellbutrin. (R.pp. 533-534). On January 21, 2010, Plaintiff told Dr. Rodgers that she had experienced some blurry vision and numbness in her fingertips on the left hand of brief duration. Physical examination was again unremarkable. (R.pp. 536-537). A subsequent MRI showed on an adenoid enlargement, otherwise normal. (R.p. 538).

Notwithstanding these generally minimal findings, on May 17, 2010 Dr. Rodgers completed an opinion of ability to do work related activities (physical) in which he opined that Plaintiff had the ability to lift and carry no more than ten pounds on an occasional basis, the ability to stand and/or walk (with normal breaks) of less than two hours in an eight hour work day, and sit (with normal breaks) less than two hours in an eight hour work day, with the necessity of lying down three times a day. Dr. Rodgers stated that these limitations were due to Plaintiff's "chronic neck & back pain". Dr. Rodgers further opined that Plaintiff would never be able to twist or climb ladders, and could only occasionally stoop, crouch or climb stairs; that she had no ability to handle (gross manipulation) or finger (fine manipulation) due to her chronic neck and shoulder pain which limited her reaching above the head, as well as chronic back pain, and that she would have to avoid all



exposure to extreme cold, wetness, humidity, poor ventilation, or hazards, and avoid even moderate exposure to extreme heat or noise. He also believed Plaintiff would be have to be absent from work more than three times a month, and that because of her anxiety she would have to limit her social contacts. (R.pp. 541-544).

## II.

The ALJ reviewed this medical evidence together with the subjective testimony from the hearing and concluded that Plaintiff retained the RFC to perform a significant range of light work, including the ability to sit for six hours in an eight hour day, stand and/or walk for two hours each in an eight hour work day, limited to only occasionally climbing ramps and stairs, and never climbing ropes/ladders/scaffolds or performing work in heights or around moving machinery. (R.p. 25). These findings are supported by substantial evidence in the record. See Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

As noted, the ALJ concluded that Plaintiff's seizure disorder, right foot impairment with chronic pain, and degenerative disc disease were severe impairments based on the limiting effects of these impairments as shown in the evidence and record in the case, and incorporated those limiting effects into Plaintiff's RFC. (R.pp. 23, 25). The ALJ further determined that Plaintiff's knee problems, anxiety, reflux disease and complaint of transient ischemic attack were not severe impairments, as there was no evidence that any of these complaints more than minimally affected her ability to perform work related activity. The ALJ noted that test results revealed no ischemia, that Plaintiff had required little medical attention for her complaints of knee pain and that examination of her knees in 2009 was generally unremarkable, and that treatment notes showed her reflux disease was well controlled. (R.p. 24); see generally (R.pp. 130, 190-192, 210-216, 232-233, 241-243, 525-



527, 533-534). With respect to Plaintiff's anxiety, the ALJ noted that Plaintiff had required limited treatment for this condition and that the physicians had found no mental impairment related limitations, thereby concluding that this condition resulted in no more than mild limitations in her activities. (R.p. 24); see generally (R.pp. 130, 190-192, 215-216, 521-522); cf. Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.]. The conclusion is further supported by the findings of Dr. Von, who did not find that Plaintiff had any severe mental impairment. (R.pp. 292, 297). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner]; see also SSR 96-6p [Agency physicians are experts in the evaluation of medical issues for purposes of disability claims].

With respect to the limiting effects of Plaintiff's seizure disorder, the ALJ pointed out that, despite Plaintiff's claim of a history of seizures dating back to age fourteen, she had been able to work full-time up to June 25, 1991, when she quit her job, and that even though the medical evidence supported a finding by the ALJ that Plaintiff should not return to her carpentry job, this evidence also reflected that she could perform other work activity, that she could engage in such activities as driving an automobile, and that extensive medical evidence showed that her seizure disorder was stable on medication and that she had rarely if ever suffered seizures (even according to Plaintiff's own self-report) from the date when she claimed she became disabled. (R.pp. 26-28); see generally (R.pp. 121, 325-326, 364-370, 495, 499-500). The ALJ further noted that EEG testing and CT examinations of Plaintiff's brain in June 1991 and May 2006 were normal, while physician examinations reflected generally normal physical and neurological findings. (R.pp. 499-500, 584-585). However, because Plaintiff has a seizure disorder (even though stable), the ALJ limited Plaintiff to only occasionally climbing ramps and stairs, and never climbing ropes, ladders, scaffolds



or performing work at heights or around moving machinery. (R.p. 28). The medical record and opinions discussed, <u>supra</u>, provide substantial evidence for the ALJ's conclusions and RFC finding. <u>Laws</u>, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; <u>Clarke v. Bowen</u>, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"].

As for Plaintiff's physical impairment, the ALJ correctly noted that there was limited evidence of complaints of head and neck pain; that Plaintiff's treatment regimen for her right foot and ankle, including physical therapy, resulted in significant improvement in her condition; and that by the time Plaintiff filed her application for disability she was only taking Ibuprofen for her pain. The ALJ further noted that Plaintiff's physical examinations generally failed to indicate she had any chronic edema, deformity, or atrophy, and that she was routinely found to have a normal gait, sensation, and strength. (R.pp. 190-191, 194-195, 215-216, 324-325, 344-345, 348, 350, 430, 506, 509, 511-515, 517-518, 524, 534). X-rays of Plaintiff's left ankle on May 13, 2009 were normal. (R.pp. 242). The ALJ's conclusions are further supported by the findings of Dr. Smolka, who opined that Plaintiff was able to perform light work with the restrictions noted, findings modified only slightly by the ALJ in reaching his RFC determination based on the greater weight of the other medical evidence. (R.pp. 28, 227-230, 287). <u>Smith</u>, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner]. The ALJ accommodated the limitations reflected by the medical record by limiting Plaintiff to light work with the ability to sit for six hours in an eight hour work day and standing or walking for only two hours each in an eight hour work day, together with the other postural limitations already recited. (R.p. 29). <u>Trenary v. Bowen</u>, 898 F.2d 1361, 1364 (8th Cir. 1990)



[Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]. Again, the undersigned can discern no reversible error in the ALJ's findings and conclusions. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)[court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]; see also Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) ["What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; Bowen, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that he has a disabling impairment].

### III.

With respect to the ALJ's treatment of Dr. Rodgers' opinion and the other medical reports, specifically those of Dr. Dorn and Dr. Carter (cited to by Plaintiff in her brief), the decision reflects that the ALJ reviewed medical record and opinions in reaching his decision, and set forth in some detail the reasons and basis for his decision. With respect to Dr. Carter's June 25, 1991 opinion that Plaintiff was not able to work full-time, and Dr. Dorn's August 23, 1991 opinion that Plaintiff was "disabled from working due to seizure disorder", the ALJ accorded little weight to either of these two opinions, noting that the medical evidence failed to support these opinions. (R.p. 27, 450, 490). Indeed, as previously noted, Plaintiff has provided no medical records from Dr. Dorn which support his conclusory opinion, while Dr. Carter's own office treatment notes found Plaintiff to be alert and oriented X 3, with fluent and clear speech, as well as that she had a normal EEG and CT scan of the brain. (R.pp. 448-449, 499-500). There is no reversible error in the ALJ's consideration of this evidence. Cf. Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027,



1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. § 404.1527(e) ["a statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"].[12]

With respect to the opinion of Dr. Rodgers, the ALJ gave Dr. Rodgers' May 2010 opinion of disability little weight, noting the substantial evidence in the record showing that Plaintiff was able to independently engage in a variety of activities of daily living, that physical examinations generally revealed less than significant findings, that Plaintiff's seizure disorder was generally stable with medication, and that she had significant improvement in her foot condition with management and treatment including injections, physical therapy, and use of a walker boot.  (R.pp. 27, 121, 130, 210-214, 241-247, 325-328, 334, 421-423).  The undersigned can find no reversible error in the ALJ's consideration and treatment of Dr. Rodgers' opinion in light of his own treatment notes containing only minimal findings and in conjunction with the other evidence of record.  See Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Burch v. Apfel, 9 Fed.Appx. 255 (4th Cir. 2001)[ALJ did not err in giving physician's opinion little

---

[12]Plaintiff also discusses the referral of Dr. Swicord, which the ALJ does not even reference in his decision.  Plaintiff argues that Dr. Swicord's apparent diagnosis of seizures and skin lesions supports her disability claim.  See (R.p. 456).  However, this one time statement by Dr. Swicord, again without any supporting medical records or documentation, suffers from the same infirmities as the statement from Dr. Dorn.  Indeed, Swicord appears to have been treating Plaintiff primarily for a problem with her thyroid.  In light of the other evidence touching more directly on Plaintiff's claims, the fact that the ALJ did not discuss Dr. Swicord in his decision is not a basis for reversal.  Dryer v. Barnhart, 395 F.3d 1206, 1211( 11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision]; Carlson, 999 F.2d at 181 [" . . . the ALJ need not evaluate in writing every piece of testimony and evidence submitted. . . ."]; Dykes ex. Rel. Brymer v. Barnhart, 112 Fed. Appx. 463, 467-468 (6th Cir. 2004)[ALJ not required to discuss all the evidence submitted] (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).



weight where the physician's opinion was not consistent with his own progress notes.]; <u>Johnson</u>, 434 F.3d at 658 [Accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating pain where she engaged in a variety of activities]; <u>see also</u> <u>Krogmeier v. Barnhart</u>, 294 F.3d 1019, 1023 (8th Cir. 2002)["When a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted)]. Therefore, this claim is without merit. <u>Hays</u>, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

## IV.

The undersigned also does not find that the ALJ conducted an improper credibility analysis, or that his decision otherwise reflects a failure to properly consider the subjective testimony and evidence in this case. The decision reflects that the ALJ reviewed Plaintiff's subjective testimony from the hearing as well as that of her husband, but found that her statements concerning the intensity, persistence, and limiting effect of her impairments were not fully credible to the extent they were inconsistent with the RFC found by the ALJ in the decision, specifically noting that the testimony concerning the severity of her seizure disorder was contradictory and inconsistent with the treatment notes showing that this condition was generally stable, that she could engage in work activity other than her previous employment if she had chosen to do so, as well as that her wide range of activities of daily living were inconsistent and contradictory with the severity of her condition as testified to by the Plaintiff. (R.pp. 26-27). <u>See</u> <u>generally</u>, <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1993)[ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; <u>see also</u> <u>Frustaglia v. Sec'y of Health and Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987)[ALJ is entitled to observe the Plaintiff, evaluate his demeanor, and consider how the Plaintiff's testimony fits with



the rest of the evidence]; <u>Anderson</u>, 344 F.3d at 815 [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints].

When objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight; <u>See</u> SSR 96-7p, 1996 WL 374186, at * 1 (1996); and after a review of the record and evidence in this case, the undersigned can find no reversible error in the ALJ's treatment of the subjective testimony as to the extent of Plaintiff's pain and limitation. <u>See</u> <u>Mickles v. Shalala</u>, 29 F.3d 918, 925-926 (4th Cir. 1994)[In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; <u>Ables v. Astrue</u>, No. 10-3203, 2012 WL 967355 at * 11 (D.S.C. Mar. 21, 2012)["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant.", citing to SSR 96-7 p.]**;** <u>Bowen</u>, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that she has a disabling impairment].

This argument is therefore without merit. <u>Jolley v. Weinberger</u>, 537 F.2d at 1181 [finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; <u>Robinson</u>, 956 F.2d at 840 [Generally conservative treatment not consistent with allegations of disability]; <u>Anderson</u>, 344 F.3d at 815 [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]; <u>Haynes v. Astrue</u>, No. 09-484, 2010 WL 3377715 at * 3 (M.D.Ala. Aug. 25, 2010)["Muscle atrophy is an objective medical indication of pain and lack thereof in [Plaintiff] militates against the conclusion that she suffers from pain which precludes her from substantial gainful activity."]; <u>Cruse</u>, 867 F.2d at 1186 ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability"]; <u>See</u> <u>Hays</u>, 907 F.2d at 1456 [it is the



responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Clarke, 843 F.2d at 272-273[“The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts”].  See also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1999)[“No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result”].

**V.**

  With respect to Plaintiff’s complaints concerning the ALJ’s use of the Grids, the fact that Plaintiff’s seizure disorder and chronic pain may qualify as non-exertional impairments does not preclude use of the Grids to direct a finding of not disabled.  When an ALJ determines that a claimant is unable to perform his or her past relevant work, as is the case here, the burden shifts to the Commissioner to show that other jobs exist in significant numbers which the claimant could perform, and Plaintiff is correct that vocational testimony is often obtained to meet this burden.  However, in appropriate circumstances the ALJ can also meet this burden by using the Grids to direct a finding that a claimant is not disabled.  See Hays, 907 F.2d at 1458 [affirming denial of benefits to claimant where the Medical-Vocational Guidelines directed a finding of not disabled].  That is what the ALJ did in this case.  Thompson v. Bowen, 850 F.2d 346, 349 (8th Cir. 1988)[“[I]f the ALJ determines that a claimant’s non-exertional limitations do not affect the claimant’s [RFC] then the ALJ may rely on the Guidelines to direct a conclusion of either disabled or not disabled without resorting to Vocational Expert testimony”].

  The ALJ determined that the limitations imposed by Plaintiff’s impairments, to include the postural limitations noted as well as the restriction from working around hazards such as heights and moving machinery, did not significantly affect Plaintiff’s occupational base, and thereby



directed a finding of "not disabled" pursuant to Medical-Vocational Rule 202.21. (R.pp. 29-30). Given the ALJ's findings (which the undersigned has already concluded are supported by substantial evidence), there was no reversible error in the ALJ's decision to direct a finding of not disabled using the Grids under the facts of this case, even considering Plaintiff's complaints of non-exertional pain and her seizure disorder. Cf. Heatly v. Commissioner of Social Security, 382 Fed.Appx. 823, 825 (11th Cir. 2010)[Noting that evidence supported ALJ's conclusion that the Plaintiff's complaints of chronic pain did not significantly limit Plaintiff's ability to perform adequately a full range of light work]; Starkey v. Astrue, No. 10-69, 2012 WL 942865, at * 13 (E.D.Mo. Mar. 20, 2012)[Finding that substantial evidence supported the ALJ's determination that Plaintiff's chronic pain syndrome did not significantly limit her ability to perform the full range of light work]; see also Kriedaum v. Astrue, 280 Fed.Appx. 555, 559 (8th Cir. 2008)[Use of guidelines proper where medical record failed to show any significant effect of pain on the claimant's functional abilities]; Sryock v. Heckler, 764 F.2d 834, 835-836 (11th Cir. 1985) [Grids are only inapplicable when the nonexertional limitations are severe enough to prevent a wide range of gainful employment at the designated exertional level]; SSR 83-14, 1983 WL 31254 at * 2 (1983)["[F]ew jobs in the national economy require ascending or descending ladders or scaffoldings."]; SSR 85-15, 1985 WL 56857, at * 8 ["A person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional level"]. This argument is therefore with out merit.

## VI.

Finally, Plaintiff complains that she submitted new evidence to the Appeals Council as part of her appeal of the ALJ's decision, but that although the Appeals Council acknowledged



receiving a letter from the Plaintiff's attorney, there was no mention of these additional reports which were attached to that letter. Plaintiff argues that these reports are important because they describe Plaintiff's pain and swelling in her joints, her neck and shoulder pain, as well as pain in her hands and feet, and that it was error for the Appeals Council not to consider and discuss this evidence.

However, a review of the Appeals Council decision shows that the Appeals Council did acknowledge receipt of this new evidence, but noted that it was dated well after the decision of the ALJ in this case and dealt with a "later time". The Appeals Council therefore found that these new submissions did not affect the decision about whether Plaintiff was disabled beginning on or before August 11, 2010, the date of the decision, and further notified Plaintiff that if she wanted the SSA to consider whether she was disabled after August 11, 2010, she needed to file a new application for benefits. (R.p. 5).

The undersigned has reviewed the attachments to Plaintiff's brief, which confirms that these documents are all dated well after the date of the decision in this case, and reflect examination findings from those later dates. See Court Docket No. 15-1 (Totaling 16 pages). The undersigned finds no reversible error in the Appeals Council's treatment of these submissions. Bishop v. Astrue, No. 10-2714, 2012 WL 961775 at * 4 (D.S.C. Mar. 20, 2012)[Finding that new evidence was not material where physician's opinion did not address whether or not Plaintiff was disabled during the relevant time period], quoting Edwards v. Astrue, No. 07-48, 2008 WL 474128 at * 9 (W.D. Feb. 20, 2008)[Finding that "[t]he [new records] do not relate back to the relevant time period as they were both done over 6 months after the ALJ rendered his decision."]; see also Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005)[Holding that the opinion of a treating physician rendered nine months after the claimant's date last insured was irrelevant].



## **Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 16, 2013
Charleston, South Carolina



### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

