**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| DONNA S. GOHAGAN, | ) | |
| | ) | No. 9:12-cv-01299-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| CAROLYN W. COLVIN,[1] *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on United States Magistrate Judge Bristow Marchant's Report and Recommendation ("R&R") that the court affirm Acting Commissioner of Social Security Carolyn Colvin's decision denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff has filed objections. For the reasons set forth below, the court adopts the magistrate judge's R&R and affirms the Commissioner's decision.

## I.  BACKGROUND

**A.  Procedural History**

Plaintiff Donna S. Gohagan ("Gohagan") initially filed for DIB and SSI on October 23, 2008, alleging an onset of disability date of June 23, 1991. Tr. 21, 39-42. She claimed disability due to epileptic seizures, feet pain, anxiety, panic attacks, and depression. Tr. 55. The Social Security Administration ("the Agency") denied Gohagan's claims initially and on reconsideration. Tr. 68-71, 72-76, 83-86. In its denial, the Agency noted that the date on which Gohagan was last insured for DIB was

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this lawsuit.

1

December 31, 1996. Tr. 55; see also Tr. 23. On November 18, 2009, Gohagan requested a hearing before an administrative law judge ("ALJ"), and on May 20, 2010, ALJ Edward Morriss conducted a de novo hearing on Gohagan's claims. Tr. 50, 590-617.

The ALJ issued his decision on August 11, 2010, finding Gohagan not disabled under the Social Security Act. Gohagan requested Appeals Council review of the ALJ's decision and submitted a letter from her attorney to the Council. Tr. 4-8, 586-87. The Appeals Council declined to review the decision, making the ALJ's decision the final, reviewable decision of the Commissioner. Tr. 4-7. Gohagan filed this action for judicial review on May 17, 2012.

After reviewing the record and the law, the magistrate judge issued his R&R, recommending that the ALJ's decision be affirmed. Gohagan objected to the R&R on April 30, 2013. The Commissioner replied to Gohagan's objections on May 2, 2013.

### B. Gohagan's Medical History

Gohagan was born on September 7, 1964, and was forty-four years old at the time she filed for DIB and SSI. Tr. 31. She was twenty-six years old on the onset date of her alleged disability. Tr. 29. She has a high school education, completed a few semesters of college and has past relevant work as a carpenter. Tr. 26, 29, 591-92.

#### 1. Seizure Disorder

The earliest medical records available show that Gohagan was seen in the neurology clinic at the Medical University of South Carolina ("MUSC") on May 28, 1991. Tr. 491. At that time, Gohagan reported that she had been treated for a seizure disorder since she was fourteen years old. Id. Though the MUSC neurology clinic's medical records are difficult to decipher, it is notable that, on October 29, 1991, Gohagan

reported to a health care professional that she had not had a seizure since April 1991. Tr. 495. On June 5, 1991, Gohagan had normal EEG and CT scans of her brain. Tr. 499-500. On June 25, 1991, a licensed social worker employed by MUSC noted that Gohagan had been advised by a physician against returning to carpentry work for "4 months until she's seizure free. [Patient] can do other types of work." Tr. 495. This social worker also reported that Gohagan "has only done carpentry and doesn't want to do anything else." Id. Gohagan continued treatment at MUSC's neurology clinic through at least May 10, 1994, when she denied any seizure activity since August 1993. Tr. 364-69.

Gohagan was treated by family physician John Swicord, M.D., from at least August 1992 to November 7, 2003. Tr. 467-88. Dr. Swicord's medical records are difficult to read, but it appears that he prescribed Dilantin[2] in August 1992 to treat her seizure disorder. Tr. 488.

On April 28, 2006, Gohagan was seen by neurology resident Irving Smith, D.O., and attending physician Paul Pritchard, M.D., at MUSC's neurology clinic. Drs. Smith and Pritchard noted that Gohagan's last seizure occurred in January 2006, though she also occasionally experienced ninety-second to two-minute episodes of "feeling funny" with some brief jerks. Tr. 580. Gohagan stated that these episodes occurred two to three times per year for the past thirteen years. Id. She also reported drinking "a lot of caffeine." Id. Drs. Smith and Pritchard changed Gohagan's anti-seizure medication from

---

[2] Dilantin, also known by the generic name phenytoin, is an anticonvulsant used to control certain types of seizures. MedLine Plus—Phenytoin, Nat'l Insts. of Health, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682022.html (last visited Sept. 5, 2013).

Dilantin to Keppra,[3] counseled her to drink less caffeine, and suggested that she maintain a regular sleep schedule. Tr. 582. On May 5, 2006, Gohagan underwent an EEG study at MUSC. Tr. 584. The results were normal. Id.

On July 28, 2006, Gohagan was seen by Dr. Smith and attending physician Saima Athar, M.D., at MUSC's neurology clinic. Dr. Athar noted that Gohagan had not had a seizure since January 2006. Tr. 579. Gohagan's neurological exam was benign. Id.

On August 20, 2008, Gohagan was seen by Amanda Hanks, F.N.P., at Palmetto Primary Care Physicians. Tr. 506. Nurse Hanks reported that Gohagan had had no seizures in two years. Id.

On February 24, 2009, primary care physician Caisson Hogue, M.D., noted that Gohagan's seizure disorder was stable and that her seizures were relieved by taking Keppra. Tr. 514. Gohagan reported that "she has muscle twitches and weird sensations" since she had begun taking a generic drug. Id. On November 4, 2009, primary care physician David Rodgers, M.D., described Gohagan's seizure disorder as stable. Tr. 526. On January 6, 2010, Dr. Rodgers wrote that Gohagan had "no seizures on wellbutrin[4] and takes ativan[5] sparingly—last seizure was 2006." Tr. 533.

---

[3] Keppra, also known by the generic name levetiracetam, is an anticonvulsant drug used to treat seizure disorders. MedLine Plus—Levetiracetam, Nat'l Insts. of Health, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699059.html (last visited Sept. 4, 2013).

[4] Wellbutrin, also known by the generic name bupropion, is a mood-elevating antidepressant that is also sometimes prescribed to assist with smoking cessation. MedLine Plus— Bupropion, Nat'l Insts. of Health, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695033.html (last visited Sept. 5, 2013).

[5] Ativan, also known by the generic name lorazepam, is an anti-anxiety medication that works by slowing activity in the brain to allow for relaxation. MedLine Plus—Lorazepam, Nat'l Insts. of Health, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682053.html (last visited Sept. 6, 2013).

### 2. Leg, Ankle, & Joint Pain

In July 2008, Gohagan was treated for plantar fasciitis at the Roper St. Francis Medical Center in Berkeley County. Tr. 412-17. On July 28, 2008, she reported that her foot was improving, though she still had occasional swelling. Tr. 412.

On February 25, 2008, and September 11, 2008, Gohagan complained to Dr. Hogue of sharp, moderate, intermittent foot and leg pain that "began 1 year ago." Tr. 284, 508. Dr. Hogue prescribed acetaminophen with hydrocodone for Gohagan's pain and ordered follow-up tests. Tr. 509. On May 7, 2009, Gohagan again complained of ankle pain and swelling. Tr. 519. Nurse Hanks directed Gohagan to rest and ice her ankle. Tr. 520.

From September 17, 2008, through June 4, 2009, Gohagan was treated by Hal Hatchett, D.P.M., for foot and ankle pain. Tr. 210-16, 242-47. Dr. Hatchett diagnosed plantar fasciitis and midtarsus degenerative joint disease. Id. Dr. Hatchett administered steroids and prescribed stretching and icing. Id. On February 4, 2009, Gohagan reported to Dr. Hatchett that she had noticed "a significant improvement in pain" in both feet. Tr. 243. On June 4, 2009, Dr. Hatchett diagnosed an ankle sprain, pain and swelling, and posterior tibial tendon dysfunction. Tr. 242. He prescribed an oral steroid, an anti-inflammatory, ice, and elevation. Id.

On June 30, 2009, Gohagan complained to her internist of stabbing pain in joints all over her body that "began months ago" and "occurs twice weekly[,] last[ing] several hours." Tr. 521. On November 4, 2009, Gohagan characterized her all-over, stabbing joint pain as having begun "years ago." Tr. 525. Tests for rheumatoid arthritis, lupus, and gout were all negative; Dr. Rodgers diagnosed osteoarthritis of the knee and

administered a steroid injection on November 11, 2009. Tr. 528. On December 1, 2009, Gohagan reported that her knee pain had improved and requested a steroid shot in her left knee. Tr. 530.

In May and June 2010, Jeff Armstrong, D.P.M., treated Gohagan for foot and ankle pain in each ankle. Tr. 574-76. Dr. Armstrong diagnosed plantar fasciitis, tendinitis, and tarsitis, with possible tarsal tunnel syndrome. Id. He prescribed Lyrica[6] for pain and encouraged Gohagan to continue using ankle braces and stretching. Tr. 576.

### 3. Anxiety & Depression

On February 24, 2009, Gohagan complained of mild anxiety and a desire to quit smoking. Tr. 514. Dr. Hogue prescribed Wellbutrin. Id. On March 24, 2009, June 30, 2009, September 1, 2009, November 4, 2009, and December 1, 2009, Dr. Rodgers noted that Gohagan's anxiety was improving and relieved by Wellbutrin.[7] Tr. 517, 521, 525, 552, 560. Dr. Rodgers also noted that Gohagan's anxiety and depression were improving on January 6, 2010. Tr. 549. These treatment notes all reflect that Gohagan's anxiety and depression were triggered by recent life stressors such as a verbally abusive husband with post-traumatic stress syndrome. See, e.g., Tr. 560.

### C. Opinion Evidence

On March 4, 2009, Judith Von, Ph.D., completed a psychiatric review technique form for Gohagan. Tr. 287-99. Dr. Von found that Gohagan had an anxiety-related

---

[6] Lyrica, also known by the generic name pregabalin, is used to relieve pain from damaged nerves. MedLine Plus— Pregabalin, Nat'l Insts. of Health, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a605045.html (last visited Sept. 5, 2013).

[7] Dr. Rodgers' notes are sometimes internally contradictory. On September 1, 2009, the notes characterize her anxiety and depression as both improving and worsening. Tr. 560-61. On December 1, 2009, Dr. Rodgers characterized Gohagan's anxiety as improving but unstable. Tr. 520-31.

disorder that was not severe. Tr. 287. Dr. Von also found that Gohagan had no limitations in activities of daily living, no limitations in social functioning, mild limitations in maintaining concentration, persistence, or pace, and no episodes of decompensation. Tr. 297. It appears that Dr. Von did not complete an accompanying mental residual functional capacity ("RFC") assessment for Gohagan.

On March 9, 2009, medical consultant Jean Smolka, M.D., completed a physical RFC assessment. Tr. 226-31, 285-86. Dr. Smolka found that Gohagan could lift 20 pounds occasionally and ten pounds frequently, stand and walk for at least two hours in an eight-hour workday, and sit for about six hours in an eight-hour work day. Tr. 227. Dr. Smolka attributed these and lower body limitations to Gohagan's foot, ankle, and knee pain. Id. Dr. Smolka further opined that, while Gohagan's limitations associated with feet were plausible, the "[c]hronic inability to walk would not be expected given the objective evidence. Partially credible." Tr. 231. Dr. Smolka also found that Gohagan's reports of chronic tingling or significant side effects from her seizure medication were "[n]ot fully credible." Id.

Dr. Rodgers completed a form entitled Medical Opinion Re: Ability To Do Work-Related Activities on May 17, 2010. Tr. 541-44. Dr. Rodgers opined that Gohagan's history of epilepsy precluded her from operating heavy machinery or working at heights, and that her anxiety disorder "limits her social contacts." Tr. 543-44. Dr. Rodger also opined that Gohagan could lift ten pounds on an occasional basis, lift less than ten pounds on a frequent basis, stand and walk for less than two hours during an eight-hour work day and sit for less than two hours during an eight-hour workday. Tr. 541. He attributed

these and several upper body limitations to Gohagan's "chronic neck + back pain." Tr. 542-43.

### D. ALJ's Decision

To determine whether Gohagan was disabled from June 23, 1991, through the date of his decision, the ALJ employed the statutorily-required five-step sequential evaluation process. At step 1, the ALJ found that Gohagan did not engage in substantial gainful activity during the period at issue. Tr. 23. At step two, the ALJ found that Gohagan suffered from the following severe impairments: a seizure disorder, a right foot impairment with chronic pain, and degenerative disc disease. Id. At step three, the ALJ found that Gohagan's impairments or combination thereof did not meet or medically equal one of the impairments listed in the Agency's Listing of Impairments. Tr. 24. Before reaching the fourth step, the ALJ determined that Gohagan retained the residual functional capacity to perform work light work with several restrictions. Tr. 25. Specifically, the ALJ found that Gohagan could lift and carry up to twenty pounds occasionally and ten pounds frequently; sit for six hours in an eight-hour work day; stand and walk for two hours each in an eight-hour work day; occasionally climb ramps or stairs; never climb ropes, ladders, or scaffolds; and never perform work at heights or around moving machinery. Id. At the fourth step, the ALJ found that Gohagan could not perform her past relevant work. Tr. 29. Finally, at the fifth step, the ALJ found that Gohagan could perform jobs existing in significant numbers in the national economy and concluded Gohagan was not disabled during the period at issue. Id.

## II.   STANDARD OF REVIEW

The court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  The court is not required to review the factual findings and legal conclusions of the magistrate judge to which the parties have not objected.  See id.  The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with the court.  Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied."  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Id. (internal citations omitted).  "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence."  Id.

## III.   DISCUSSION

Gohagan raises six objections to the magistrate judge's R&R.  The court considers these objections in turn.

### A. Evaluation of Gohagan's Seizure Disorder

First, Gohagan "objects to the Magistrate's findings regarding her seizure disorder."[8] Pl.'s Objections to R&R 2. Gohagan maintains that the existence of her seizure disorder mandates a finding that she is disabled.

The ALJ is obligated to explain his findings and conclusions on all material issues of fact, law, or discretion presented. 5 U.S.C. § 557(c)(3)(A) (2012). In this case, the ALJ found that Gohagan had been able to work up until 1991 despite having been diagnosed with a seizure disorder many years before. Tr. 26. The ALJ also explained that statements Gohagan made to an MUSC social worker in 1991 suggested that "while she was able to perform other work activity, she chose not to do so." Id. Finally, the ALJ determined that Gohagan's seizures were "fairly well-controlled by medications and do not significantly interfere with activity during the day." Tr. 25. The ALJ supported these findings with citations to Gohagan's treatment records, in which physicians repeatedly described her seizure disorder as well-managed and in which Gohagan repeatedly denied having seizures.

The magistrate judge carefully reviewed the ALJ's findings regarding Gohagan's seizure disorder and correctly determined that those findings were supported by

---

[8] Gohagan repeatedly attributes the ALJ's actions to the magistrate judge, asserting that the magistrate judge found that Gohagan is not disabled, that she can do light work, that little weight should be accorded to her treating physician's medical opinion, and that her pain would not prevent her from performing light work. Contrary to Gohagan's assertions, the magistrate judge made no such findings. Rather, he determined that the ALJ's findings on these issues were supported by substantial evidence.

In appeals such as this one, the magistrate judge's review is limited to determining whether the ALJ supported his decision with substantial evidence and correctly applied the law. Hays, 907 F.2d at 1456. The magistrate judge does not reweigh the evidence and determine anew whether a claimant is disabled. In this case, the magistrate judge reviewed the ALJ's decision in precisely the manner required by law.

substantial evidence. R&R 15. Though a physician in the MUSC neurology clinic wrote in October 1991 that Gohagan was unable to continue with her employment as a carpenter who helped construct bridges, Tr. 489, no one at MUSC opined that Gohagan was disabled. The fact that a physician named Douglas Dorn noted that Gohagan was disabled "due to seizure disorder from 4-15-91 to 6-1-92, at least," Tr. 490, does not trump the significant evidence that Gohagan's seizure disorder was well-controlled through medication. <u>Oppenheim v. Finch</u>, 495 F.2d 396, 398 (4th Cir. 1974) ("A physician's statement [that a claimant is disabled], of course, is not conclusive of the ultimate fact in issue . . . ."). Indeed, Plaintiff has provided no medical records authored by Dr. Dorn. As a result, there is no way for the court to ascertain what evidence, if any, supports Dr. Dorn's assessment.[9]

The magistrate judge's findings were correct insofar as they related to the ALJ's assessment of Gohagan's seizure disorder. Gohagan's first objection is overruled.

### B. Determination that Gohagan Could Do Light Work

Gohagan next argues that she is unable to perform light work. Pl.'s Objections 2.

When determining that Gohagan maintains the ability to do light work, the ALJ "considered the medical opinions of the claimant's treating physicians, evaluating physicians, and the state agency medical consultants," as well as the testimony of Gohagan and her husband, Billy Joe Hucks. Tr. 27-28. The ALJ explained the weight he assigned to each physician and to Gohagan's and Hucks' testimony; he considered all of these opinions in light of the record evidence. Ultimately, the ALJ determined – with citations to the record – that Gohagan's seizure disorder was well-controlled, her foot

---

[9] Similarly, a July 6, 1992 letter in which a South Carolina state employee wrote that Gohagan "is currently unable to work due to her disability" does not undermine the magistrate judge's determination that substantial evidence supported the ALJ's decision.

conditions significantly improved, and her complaints of head and neck pain were quite limited. Tr. 28-29. The ALJ further found that Gohagan's impairments were such that she should be limited to light work with a variety of postural restrictions.

The evidence relied on by the ALJ was certainly "more than a scintilla." See Hays, 907 F.2d at 1456. The record evidence, as well as Dr. Smolka's opinion, supports the ALJ's finding. Accordingly, the magistrate judge appropriately found that the ALJ's decision was supported by substantial evidence. Gohagan's second objection is overruled.

### C. Weight Assigned to Dr. Rodgers' Medical Opinion

Third, Gohagan contends that the magistrate judge erred by finding that Dr. Rodgers' medical opinion was inconsistent with the record and deserving of little weight. Pl.'s Objections 3.

Social Security regulations require the ALJ to consider all of the medical opinions in a claimant's case record, as well as the rest of the relevant evidence. 20 C.F.R. § 404.1527(c) (2012). Medical opinions are evaluated pursuant to the following non-exclusive list:

> (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.

Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). In general, more weight is given to the opinion of a "source who has examined [a claimant] than to the opinion of a source who has not," 20 C.F.R. § 404.1527(c)(1), but "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

12

The ALJ must also give specific reasons for the weight given to a treating physician's medical opinion. See SSR 96-2p (July 2, 1996).

The ALJ chose to accord little weight to the opinion of Gohagan's treating physician Dr. Rodgers. Tr. 27. Specifically, the ALJ found that Dr. Rodgers' opinions

> [A]re generally unsupported by the weight of the evidence of record. As indicated throughout this decision, treatment notes indicate that the claimant's seizure disorder was generally stable with medication and management and her foot condition improved significantly with treatment including injections, physical therapy, and placement in a walker boot. Follow-up examinations generally revealed less than significant findings and the claimant was able to engage in her activities of daily living independently.

Tr. 27. As the magistrate judge aptly noted, Dr. Rodgers' own treatment notes for Gohagan contain minimal findings. Likewise, the other medical records in evidence show that Gohagan's ankle, foot, and joint pain had significantly improved with treatment, and that her seizure disorder, anxiety, and depression were all controlled by medication. While Dr. Rodgers based his opinion on Gohagan's "chronic neck + back pain," there is scant evidence that Gohagan has sought treatment for such pain. Indeed, just four months before Dr. Rodgers submitted his medical opinion to Gohagan's attorney, his treatment notes reflect that Gohagan had "no neck pain." Tr. 547; see also Tr. 549 ("NECK – Denies pain or swelling").

As Dr. Rodgers' opinion is inconsistent with his own treatment notes, neither the ALJ, the magistrate judge, nor the court need credit it. See Burch v. Apfel, 9 F. App'x 255, 259-60 (4th Cir. 2001) (finding that an ALJ need not give controlling weight to a treating physician when her medical opinion is inconsistent with her own treatment notes). Gohagan's third objection is overruled.

### D.  Use of the Medical-Vocational Guidelines

Fourth, Gohagan asserts that the ALJ erred by relying on the Medical-Vocation Guidelines ("the Grids"), rather than the testimony of a vocational expert, when determining whether there were specific jobs within the national economy that she could perform.  Pl.'s Objections 4.  Gohagan also argues that the ALJ erred by failing to cite specific occupations that she could perform and the prevalence of such jobs in the national economy.  In addition, Gohagan contends that the ALJ should have called a vocational expert to testify about what jobs would be available to her.

Once an ALJ finds that a claimant cannot return to her prior work, the ALJ bears the burden of establishing that the claimant could perform other work that exists in the national economy.  See 20 C.F.R. §§ 404.1520(f)-(g), 416.920(f)-(g); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Agency may sometimes rely exclusively on the Grids, found at 20 C.F.R. Part 404, Subpart P, App'x 2.  "Exclusive reliance on the 'grids' is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors."[10]  McElveen v. Colvin, No. 12-cv-01340, 2013 WL 4522899, at *5 (D.S.C. Aug. 26, 2013); see also 20 C.F.R. Part 404, Subpart P, App'x 2, § 200.00(e); Gory v. Schweiker, 712 F.2d 929, 930–31 (4th

---

[10] The Fourth Circuit has explained that:

> An exertional limitation is one which manifests itself by limitations in meeting the strength requirements of jobs.  A nonexertional limitation on the other hand is a limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not, such as mental retardation, mental illness, blindness, deafness or alcoholism.  Such limitations are present at all times in a claimant's life, whether during exertion or rest.

Gory v. Schweiker, 712 F.2d 929, 930 (4th Cir. 1983).

Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).

In this case, the ALJ determined that application of the Grids was appropriate because Gohagan's exertional limitations did not significantly affect her occupational base. See Tr. 29-30. The ALJ then found that Gohagan qualified as a younger individual aged 18-49, with at least a high school education, and that the transferability of her job skills was immaterial because the Grids supported a finding of "not disabled" whether or not her job skills were transferable. Id. Under Grid rule 202.21 (for light work), the ALJ found that Gohagan was not disabled. Id.

As the magistrate judge explained, it was not error for the ALJ to use the Grids, rather than the testimony of a VE, to make his disability determination.

> [A]n ALJ is not always required to consider testimony of a VE in order to find a claimant "not disabled" when the claimant has both exertional and nonexertional limitations. If Plaintiff's nonexertional limitations have a minimal effect on his exertional occupational base, then a finding directed by the Grids is sufficient, and testimony by a VE is unnecessary.

Pearce v. Colvin, No. 12-cv-01999, 2013 WL 2470305, at *9 (D.S.C. June 7, 2013) (quoting Boland v. Astrue, No. 08-cv-00798, 2009 WL 2431536, at *7 (E.D. Va. Aug. 7, 2009)). Because the ALJ was able to rely on the Grids when making his disability determination, it was unnecessary for the ALJ to cite specific jobs that Gohagan could perform and their prevalence in the national economy. For these reasons, Gohagan's fourth objection is overruled.

### E.  Evaluation of Gohagan's Pain

Fifth, Gohagan argues that the ALJ and the magistrate judge erred by not properly evaluating Gohagan's pain. Pl.'s Objections 4.

The Fourth Circuit has developed a two-part test for evaluating a claimant's allegations of pain.  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  First, the ALJ must determine that there is objective medical evidence of a medical impairment reasonably likely to cause the pain alleged by the claimant.  Id.  Second, the ALJ must consider "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work."  Id. at 595.

In this case, the ALJ scrutinized the record and reviewed Gohagan's hearing testimony, as well as that of her husband.  The ALJ first determined that "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."  Tr. 26.  Second, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible . . . ."  Id.  In particular, the ALJ explained – with citations to the record – that Gohagan managed her pain with ibuprofen, and that her subjective complaints were inconsistent with her medical treatment notes and activities of daily living, which showed that her medical conditions and pain were well managed.  Id.

The ALJ evaluated Gohagan's pain in keeping with the two-step process outlined by the Fourth Circuit, and his findings are supported by substantial evidence.  The magistrate judge did not err when he found that the ALJ properly evaluated Gohagan's complaints of pain.  Gohagan's fifth objection is overruled.

**F.  The Appeals Council's Consideration of Additional Evidence**

Finally, Gohagan "objects to the Magistrate's finding regarding the new reports from MUSC's Department of Rheumatology dated 2/2/11, 2/3/11 and 4/13/11 which were filed with the Appeals Council."  Pl.'s Objections 5.  Gohagan maintains that the

16

Appeals Council did not properly consider this evidence, which consists of the treatment notes of MUSC rheumatologist Jennifer Murphy, M.D.

While a claimant may present additional evidence to the Appeals Council that was not available to the ALJ, the Appeals Council must review additional evidence only if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep., of Health & Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991); see also 20 C.F.R. § 404.970(b); Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" Meyer, 662 F.3d at 705 (quoting Wilkins, 953 F.2d at 96).

As an initial matter, the medical records submitted to the Appeals Council do not appear to constitute either new or material evidence. Indeed, Gohagan's counsel appears to admit that the records are cumulative, and therefore could not be considered "new" evidence. Pl.'s Objections 5 ("[T]hese reports . . . corroborate Plaintiff's reports documenting Plaintiff's joint pain, swelling, and stiffness.") (emphasis added). But even if these records were new and material evidence, it would still be inappropriate for the Appeals Council to consider them because they do not relate to the period on or before the ALJ's decision. The medical records submitted to the Appeals Council date to February and April 2011, months after the ALJ issued his opinion in this case. Pl.'s Brief Ex. 1, ECF No. 15-1; Tr. 30. Additionally, there is no evidence that Dr. Murphy treated Gohagan at any time before the ALJ's opinion issued.

The magistrate judge did not err in his assessment of the Appeals Council's actions. As a result, Gohagan's final objection is overruled.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's R&R, and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 10, 2013**
**Charleston, South Carolina**